# Charleston.

## LEVY *v.* PEABODY INSURANCE COMPANY.

### (Absent, HAYMOND, JUDGE).

### Decided May 1, 1877.

1877.
January Term.

1. In an action of *assumpsit* on a policy of insurance against fire, the declaration alleges that the plaintiff has on his part performed all the conditions of the policy ; this must be regarded as meaning such as have not been waived, and if the defendant pleads that a certain condition, specifying it, has been violated by the plaintiff, he may reply that the right to insist on the performance of this condition has been waived, specifying the manner in which it has been waived. And if the declaration alleges specifically the performance of a particular condition, and the defendant pleads *non-assumpsit*, the plaintiff can sustain this allegation by proving that the performance of this particular condition had been waived by the defendant.

2. An adjustment with the assured, after a loss by fire, with a full knowledge of all the facts, is a waiver of a right on the part of the company to insist on the benefit of a provision in the policy that the obtaining of other insurances on the property, without their consent, should render the policy void, and also of a provision requiring the assured to furnish the company, before it should be liable, with the certificate of a notary public of certain facts.

3. On a demurrer to evidence by the defendant, all his evidence contradicted by the plaintiff's is waived, as well as all his evidence which is given by witnesses whose credit is impeached, either directly, or by the contradiction of statements made by them of material facts.

This was a *supersedeas* to a judgment of the circuit court of Kanawha county, rendered on the 30th day of June, 1876, in an action in said circuit court, then pend-

ing, in which L. W. Levy, was plaintiff, and the Peabody Insurance Company was defendant.

The *supersedeas* was allowed upon the petition of the defendant below.

GREEN, PRESIDENT, who delivered the opinion of the Court, sufficiently states the case.

The Hon. Joseph Smith, Judge of the seventh judicial circuit, rendered the judgment complained of.

*Wm. H. Hogeman,* for the defendant below and plaintiff in error.

(See authorities cited by him in the case following of *Mason v. Insurance Company*).

*Smith & Knight, Mollohan & Fontaine,* for the plaintiff below and defendant in error, referred the court to following authorities:

1 Chitty Pl., 457, side page; *Horton & Hutton v. Townes,* 6 Leigh, 58; *May v. State Bank of North Carolina,* 2 Rob. R., 66; 1 Chitty Pl., 551–2, side paging; 5 Rob. Pr., 23; *Hooff v. Rollins,* 5 W. Va., 540; Bigelow on Estoppel, 578; *Webster v. Phœnix Ins. Co.,* 36 Wis., 67; *Haywood v. National Ins. Co.,* 52 Mo., 181; Flanders on Fire Ins., 541-2; *West Rockinghan F. Ins. Co. v. Sheets & Co.,* 26 Gratt., 864; 2 Phillips on Ins., 671;

GREEN, PRESIDENT, delivered the opinion of the Court.

On June 27, 1874, L. W. Levy, brought an action of *assumpsit,* in the circuit court of Kanawha county against the Peabody Insurance Company, on a policy of insurance dated March 18, 1873, whereby the defendant insured against fire for one year from that date, to the amount of $1,800, his stock of ladies and gentlemen's furnishing goods, notions, fancy goods, and such other goods as are usually kept in a ladies' and gentlemen's furnishing goods store, in a certain building in Charles-

ton, West Virginia. The writ was returnable to August rules, 1873. The defendant then filed a plea to the jurisdiction of the court, which is an exact copy of the plea to the jurisdiction filed in the cases of *Quarrier v. The Peabody Insurance Company,* and *Quarrier v. The Ætna Fire and Marine Insurance Company, of Wheeling,* decided at the present term of this court. On motion, the court struck out this plea. This action of the court was right for the reasons assigned in the opinion in said cases, decided at this term. The declaration of the plaintiff was upon the policy itself, which was set out at length in the declaration, and contained the provisions set out in the policies in said cases before referred to, and others of which it is only necessary to quote the following : " If the plaintiff shall have or shall, thereafter, make any other insurance on the property in said contract or policy described, or any part thereof without the consent of the defendant, written on the said contract or policy, then the policy shall be void." The plaintiff in his declaration, alleged that "he had duly kept and performed all the requirements and conditions contained in said policy, and so continued from thence up and till the time of said loss." He also alleges, "that he did also produce and deliver to the defendant at its office in the city of Wheeling, a certificate under the hand and seal of D. C. Gallaher, a notary public, nearest the place of said fire, and who was not concerned in any loss occasioned by said fire, as a creditor, or otherwise, and not related to the plaintiff; that he, the said D. C. Gallaher, had examined the circumstances attending the loss sustained by plaintiff by said fire, and knew the character and circumstances of the plaintiff, and he verily believed that the plaintiff by misfortune, and without fraud or evil practice, had sustained loss and damage on the property insured to the amount of $1,-428.41." The matters set forth above, are by the policy, required to be done by the plaintiff, but no penalty is attached to his failure to do this by the terms of the policy,

except that the loss is not payable till these things have been done. The defendant demurred to the declaration, but has presented to this Court, no grounds on which his demurrer is based. And I see no defect in the declaration. The demurrer was properly overruled. The defendant then plead *non-assumpsit* and issue was joined, he also tendered a special plea in which he set forth the above provisions of the policy requiring the consent of the company to be endorsed on the policy before any other insurance of the property could be made under the penalty of the policy being forfeited, and alleged that, " without the knowlege or consent of the defendant, the plaintiff did after the issuing of the aforesaid contract or policy, and before the fire in the declaration alleged, make and obtain other insurances on the property in said contract or policy described, to-wit: $500 in the Nail City Fire Insurance Company, of Wheeling; $700 in the Sunberry Fire Insurance Company, of Sunberry, Pennsylvania; and $500 in the Franklin Insurance Company, of Wheeling." To the filing of which plea, the plaintiff objected and the court overruled his objection and permitted this plea to be filed, the plaintiff then offered three several special replications to the defendant's special plea. The first of these special replications, alleged, substantially, that after the defendant had full knowledge of all the facts in his said plea alleged, and after said fire and before the institution of this suit defendant and said three other insurance companies, jointly settled and adjusted said loss of plaintiff at $1,428.41, and then and there apportioned said loss among said companies as follows: to the defendant, $457.09 3-100; to the Nail City Fire Insurance Company, of Wheeling, $285.68 5-100; to the Sunberry Fire Insurance Company, $399.95 12-100; and to the Franklin Insurance Company, 285.68 5-100. And the said defendant and said other companies agreed among themselves and with the plaintiff, that they would pay to the said plaintiff, their portions of said loss as aforesaid, which the

plaintiff agreed to receive and to discharge each of them from further liability, which agreement has been carried out as to all these companies, except the defendant and it prays judgment, whether the defendant ought, contrary to said adjustment and agreement, to be admitted to say that said policy of insurance is forfeited and void. The second special replication set forth the same facts and adds the further allegation, that upon the happening of the loss the three other companies became and were liable for the whole amount of said loss independent and exclusive of the defendant's liability therefor. The third special replication set out the facts stated in the first, varying the statement only by saying that the plaintiff disputed the correctness of said adjustment and claimed that the true amount of said loss was largely in excess of $1,428.41, and the said defendant and said three other companies in consideration that the defendant agreed to abandon and waive his said claim to additional loss and to accept and receive the amount so adjusted and apportioned in full discharge of their, and each of their, liabilities on account of said loss agreed then and there among themselves and with the plaintiff that they would respectively pay to the plaintiff the portions of said loss, so respectively apportioned to them aforesaid, which agreement has been carried out and completed by all of said companies except the defendant. These replications the court permitted to be filed and the plaintiff took his bill of exceptions and then rejoined generally and issues were joined. On the trial of the issues the jury assessed the plaintiff's damages at $511.02 subject to the opinion of the court on the demurrer to the evidence which was filed by the defendant. The court held that the evidence was sufficient in law to maintain the issue joined on the part of the plaintiff, and it rendered a judgment in his favor for $511.02, the damages assessed by the jury with interest on same from Jan. 2, 1876, the day the verdict was rendered, and costs. A writ of error was allowed to this judgment.

1877.
January Term.

Levy
v.
Peabody Insurance Company.

Assuming for the present, that the three special replications to the defendants special plea, all set forth facts, which if true, would have been a waiver by the defendant of the forfeiture of the policy resulting from the facts set forth in the plea, I shall consider first whether it was proper to permit the filing of a special plea and the three special replication to it and what is the effect of these pleadings upon the evidence which might be introduced on the trial.

There has been considerable diversity of opinion on the proper mode of bringing into the pleadings on the part of the plaintiff, of a waiver of the defendant of any of his rights, and what is the effect on the admissibility in evidence of a waiver where the plaintiff has wholly failed to plead such waiver. The strict rule of common law pleading permitted, if it did not absolutely require the plaintiff, in his pleading, to allege that a defense of the defendant had been waived and how it had been waived and the English courts still hold that unless the plaintiff, in his pleading, has alleged such waiver specially, it cannot be proven on the trial. But the weight of American authorities are the other way; thus: "If the plaintiff, in his declaration (as in this case), allege that he has, on his part, performed all the conditions of a policy of insurance, and has violated none of its provisions, he must be regarded as meaning such as have not been waived. Such as have been waived are, in effect, as if they had never been inserted in the contract." This is the language of Judge Moncure, in delivering the opinion of the court in *West Rockingham Mutual Fire Insurance Company v. Sheets & Co.*, 26 Gratt., 874, and he adds: "I think the American authorities, or a decided preponderance of them, show that to be a correct rule with us, while the English rule appears to be different. See 4 Rob. Pr., 443, and 2 Smith's Leading Cases; Wallace's Notes, p. 74, and cases cited; see, also, *Ketchum v. Protection Insurance Company*, 1 Allen (New Brunswick Reports), and *Lycoming County Mutual Insurance Company v. Schel-*

1877.
January Term.

Levy
v.
Peabody Insur-
ance Company.

*lenberger,* 44 Penn. St. R., 259." These views are sustained by the following authorities: *Blakely v. Grant,* 6 Mass., 388; *Whiteford v. Burckmyer,* 1 Gill, 143; *Duval v. Farmers' Bank,* 9 Gill & J., 31; *Norton v. Lewis,* 2 Conn., 480; *Taunton Bank v. Richardson, &c.,* 5 Pick., 444; *Patton v. McFarlane,* 3 Penrose & Watts' R. (Pa.), 419; and where, instead of a general allegation that he has performed all the obligations on his part, the plaintiff makes a specific allegation that he has performed a specific duty imposed on him, this specific allegations sustained by the proof that the defendant has waived his right to require the performance of this duty. As for example, if a declaration on a negotiable note allege notice to an endorser, this allegation is sustained by proof of such facts as dispense with notice. *Shirley v. Fellows, Wadsworth & Co.,* 9 Porter, 300; *McVeigh, et al. v. The Bank of the Old Dominion,* 26 Grat., 785; see also *Camp v. Bates,* 11 Conn. R., 487; *Spam v. Baltzel,* 1 Fla. R., 302; *Windhan Bank v. Norton,* 22 Conn., 213. In this case, therefore, though the declaration alleges that the certificate of a notary public, such as was required by the policy, was furnished the defendant, yet this allegation is sustained by proving facts which dispense with the necessity of the defendant furnishing such certificate, that is by a waiver of this provision of the policy by the defendant, and there is no necessity in order to admit such proof that the declaration should have alleged such waiver. In this case the court having permitted the defendant to file a special plea alleging the non-performance by the plaintiff of one of the conditions of the policy, concluding it with a verification, there was certainly no error on the part of the court, in permitting the defendant to file the three special replicatinos thereto, if the facts alleged in them, severally constituted a waiver of the performance of the duty on the part of the plaintiff, alleged in the plea not to have been performed, that is the obtaining of the consent of the

1877.
January Term.

Levy
v.
Peabody Insurance Company.

defendant in writing to the three additional insurances. It may be that defendant would have had a right under a general replication to this plea to have proven these acts amounting to a waiver, but surely no objection can be made to his replying to them specially, thus giving the defendant full notice of the manner in which he would meet his proposed defense. It remains then, to enquire whether the acts referred to, amount to a waiver on the part of the defendant of his right to rely on the provisions of the policy set up in his plea. The case of *Eagan v. Ætna Fire and Marine Insurance Company, of Wheeling*, decided at this term of the Court, shows that a mere adjustment, if made with a knowledge of all the facts, amounts to a waiver of all defenses based on provisions in the policy. And such an adjustment is alleged in each of these special replications, and in addition thereto facts are alleged in each of them which make it still clearer that the defendant is estopped, if these facts are true, from setting up any such defense as his special plea proposes. One of these special replications alleges that by this adjustment the plaintiff released three other companies from the payment of the whole of his loss, which they would have been bound to do if the defendant had insisted on his right to avoid the policy he had issued. Another of these pleas alleged that the defendant had as a consideration for this adjustment surrendered a considerable portion of his claim for loss and damages not only against the defendant, but also against three other companies. Acts of the defendant much more equivocal have been held a waiver of this provision in a policy. See *Webster v. The Phœnix Insurance Company*, 37 Wis., p. 57; *Haywood, assignee v. National Insurance Company*, 52 Mo., 181. The only remaining question is, did the circuit court err in finding for the plaintiff on the demurrer to the evidence. The evidence establishes beyond all question the plaintiff's right to recover the amount of damages assessed in his favor by the jury, unless he is precluded from recovering by reason of his

having taken out the three insurances named in the special plea after the issuing of the policy, without the consent of the defendant, or by reason of his not having forwarded to the defendant with his proof of loss, the certificate of a notary public, such as the policy required. These facts were proven, and will defeat the plaintiff's right to recover, unless the defendant is estopped by his acts from setting up such defenses, by his having waived his right so to do. The only question then is, had he thus waived his rights. The plaintiff proved by J. D. Moore, an insurance agent, residing in Charleston, that two or three days after the fire which occurred, Jan. 19, 1874, J. V. L. Rodgers, the assistant secretary of the defendant who had been, and was acting as principal secretary of the defendant, the principal secretary being in bad health, came to Charleston. He came to Charleston to adjust the losses caused by this fire, the defendant having several losses by this fire. Rodgers assisted in taking the account of the plaintiff's loss. The witness also assisted till Winans, the general agent of the Sunberry Company came on. Coen, who was the clerk of the adjusters, made the proof of loss. Rodgers made up the contribution and apportionment of proportion of loss. The schedule and apportionment of loss attached to the proof of loss sent to the defendant at that time is in Rodgers' hand writing. This apportioned to the defendant $457,09 3-25; to The Sunberry Company, $399.95 12-25; to the Franklin Company, $285.68 5-25, and to the Nail City Company, $285.68 5-25, in all $1,428.41. Bishop, who was one of the adjusters was the general agent of the Franklin Company; Winans was the general agent of the Sunberry Company; Rodgers represented the Peabody Company, and Bishop and Rodgers having received a dispatch from the Nail City Company, acted for it. Rodgers had the goods invoiced two or three times. He gave the witness some of Levy's goods that were damaged, saying that as Levy said they were worth nothing, his company would take them. Rodgers saw the policy be-

1877.
January Term.

Levy
v.
Peabody Insurance Company.

fore the invoice was taken. He knew there were other insurances on these goods before the invoice was taken or he prepared the papers, the figures, $457.09 3-25, were endorsed on the back of the policy by Bishop in Rodgers presence. A similar endosement of amount to be paid by each company was endorsed on each of their policies. These endorsements were made to guide the clerk, Coen, in making the proper apportionment among the companies. All the other companies paid the amount apportioned to them. Coen, the clerk of the adjusters, who came on with Bishop and Rodgers under their direction made out a paper, headed "Adjustment of Losses," so much of this paper as refers to the loss of the plaintiff is as follows :

1877.
January Term.

Levy
v.
Peabody Insurance Company.

ADJUSTMENT OF LOSSES.

| Date of Policy. | No. of Policy. | Name of Company. | Amt. of Pol'y. | L. W. LEVY. | |
|---|---|---|---|---|---|
| | | | | Insures | Pays. |
| April 2, 1873..... | 19,942 | Franklin......... | 500 00 | $500 00 | $285 68 5-25 |
| March 18, 1873.. | 4,519 | Peabody... ...... | 800 00 | 800 00 | 457 09 3-25 |
| Oct. 14, 1873..... | 2,396 | Nail City........ | 500 00 | 500 00 | 285 68 5-25 |
| Dec. 30, 1873..... | 1 | Sunberry ....... | 700 00 | 700 00 | 399 95 12 25 |

This was made out in duplicate; one taken to Wheeling, and the other left with witness.

The plaintiff testified that his losses by the fire were between $1,900 and $2,300. Rodgers asked him to invoice goods lost; he did so, but Rodgers was not satisfied. With the aid of a young man, he invoiced them again, but not being yet satisfied, Rodgers and Winans invoiced them. Rodgers gave Moore and Egans some of his damaged goods, which had been invoiced as lost. They took his store books and kept them a day or so and brought them back with the policy, on which was endorsed $457.09 3-25. Similar endorsements were made on the other policies, in all over $1,400. Bishop and Winans told him to go to a notary and swear to proof of

71

1877.
January Term.

Levy
v.
Peabody Insur-
ance Company.

loss; followed their directions, returned the papers, and gave them to Bishop in Rodgers' presence. They made no objection to these papers. Next day all four parties, Moore, Rodgers, Bishop, Winans and plaintiff, being together, Rodgers remarked to plaintiff, "we have done the best we could for you, and we feel sorry for you, but we could not give you any more." This evidence, it seems to me, on a demurrer to evidence by the defendant, establishes an adjustment, but it is unnecessary in this case to establish an adjustment. The policy itself is sued upon, and it was only necessary to prove a waiver of the provision of the policy, declaring a forfeiture on account of further insurance, without written consent of defendant, and of the provision requiring the notary's certificate to be returned with the proof of loss. The proof of loss was submitted to the secretary of the defendant, and indeed made out under his direction, a part of it being in his handwriting when returned. He did not object because the notary's certificate was not with it, but actually adjusted the loss to his own satisfaction. The paper made out under his direction, headed "Adjustment of Losses," stating on its face that the defendant pays to the plaintiff $457.09 3-25; and he express regret he could do no better for plaintiff. The law as stated above would unquestionably make this a waiver of the only matters which stood in the way of the plaintiff's recovery. It is true, the testimony of Rodgers, Bishop and Coen, as taken by the defendants, contradict these statements, but their statements on several points are pointedly contradicted by the plaintiff's witnesses, and being thus discredited, it can not be considered by the court on a demurrer to evidence. Rodgers states he had authority to adjust subject to the approval of the company. He says he told the plaintiff that the defendant was not liable because of the additional insurance; this is denied by the plaintiff; he says at the earnest soliciation of the plaintiff, he assisted him in making out his proof of loss, and took it to the defend-

ant. The inference is left that this is all he did. The whole of plaintiff's testimony contradicts this. It is also contracted by the evidence of Bishop and Coen, who speak of his adjusting this loss, but Bishop does say that he heard Rodgers tell plaintiff his company was not liable for anything. But this is positively contradicted by plaintiff, and it was further proven by the plaintiff, that Rodgers was the general agent of the defendant, and as such, settled their losses and made adjustments, and he never informed the plaintiff that his action had to be approved by the company. Under the law, which regulates the weight to be given to the defendants' evidence on his demurrer to evidence, his evidence in this case is not entitled to any weight. The judgment of the circuit court must, therefore, be affirmed, and the appellant must recover of the appellee, his costs in this Court expended, and damages according to law.

JUDGMENT AFFIRMED.